IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES L. BOLDEN,                              )
                                             )
                    Plaintiff,                )
                                             )         CIVIL ACTION
v.                                           )
                                             )         No. 02-2635-KHV
THE CITY OF TOPEKA,                          )
                                             )
                    Defendant.                )
_____)

**MEMORANDUM AND ORDER**

James L. Bolden brings suit against the City of Topeka ("the City"), alleging violations of 42 U.S.C.

§§ 1981, 1982, 1983 and 1985 and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 3605.  The

Court dismissed plaintiffs claims under the Rooker-Feldman doctrine, see Rooker v. Fid. Trust Co., 263

U.S. 413, 416 (1923), and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983), and on March

21, 2006, the Tenth Circuit Court of Appeals reversed, see Bolden v. City of Topeka, 441 F.3d 1129

(10th Cir. 2006).  The Tenth Circuit found that plaintiff was not seeking to overturn a state court judgment

and that Rooker-Feldman did not apply.  Id. at 1145.  The Tenth Circuit noted that plaintiff's federal claims

"may still be precluded under res judicata doctrine," however, and remanded the matter for further

proceedings.  Id.

On May 16, 2006, the Court ordered plaintiff to show good cause in writing why his claims should

not be dismissed under the doctrine of res judicata.[1]  See Order To Show Cause (Doc. #138) filed May

---

[1]     Under modern Kansas law, "res judicata" typically refers to claim preclusion, as distinct
from issue preclusion or collateral estoppel.  Waterview Resolution Corp. v. Allen, 274 Kan. 1016, 1023,
(continued...)

16, 2006.  The matter comes before the Court after briefing by both parties.  For reasons stated below,

the Court finds that plaintiff's claims under Section 1981 and Sections 3604 and 3605 of the FHA should

be dismissed under the doctrine of res judicata.

## Factual Background

The issues presented in his action involve a complex procedural history including prior

administrative and judicial proceedings at the state level and the current federal action.  The factual

background is taken from plaintiff's second amended complaint and, where necessary, from the record of

the state administrative and judicial proceedings.

On August 29, 2001, James Bolden purchased two separate pieces of property in Topeka,

Kansas – one at 1146 Washburn and the other at 421 Southwest Tyler – at a county sheriff's sale.

## I.      The 1146 Washburn Property

On August 30, 2001, the day after plaintiff purchased his properties, he received a call from Kevin

Rooney, an employee at the Topeka Housing and Neighborhood Development Department.  Rooney

advised plaintiff that the City intended to obtain the property at 1146 Washburn to tear it down, but that

it had slipped through its hands.  He offered plaintiff $5,000 for the property.  Plaintiff declined Rooney's

offer because it was significantly less than the county-appraised value of $37,000.  At the time, plaintiff did

not know that the Code Compliance Services section of the City/County consolidated government planning

department had held a hearing on August 6, 2001 and determined that the property would be removed or

---

[1](...continued)
58 P.3d 1284, 1290 (2002).  Out of an abundance of caution, plaintiff's response discusses both claim and
issue preclusion, but as used in this order, the term "res judicata" is intended to refer only to claim
preclusion.

demolished in 30 days because it was unfit for human habitation and could not be repaired at a reasonable cost.

When plaintiff learned that the City had scheduled his property for demolition, he called the Code Compliance Services section. On October 15, 2001, he participated in an administrative hearing. At the hearing, an administrative officer questioned plaintiff about his level of education and his ability to finance the rehabilitation, repair the house and manage the project. The hearing officer dismissed plaintiff's plan to obtain federal rehabilitation funds, stating that the City had exhausted all such funds. The administrative hearing officer issued an order to this effect on October 19, 2001. On November 9, 2001, in Shawnee County District Court, plaintiff sued the City, the Code Compliance Services and the Housing and Neighborhood Development Department seeking temporary and permanent injunctions to prevent the demolition of his property at 1146 Washburn, to enjoin the City from blocking his rehabilitation efforts and holding him liable for involuntary demolition costs, and to secure a declaration that the City had misused federal funds.  See Petition For Temporary And Permanent Injunction, Exhibit A to Memorandum In Support Of Defendant City Of Topeka's Motion To Dismiss  ("Defendant's Memorandum") (Doc. #18) filed May 23, 2003.  Plaintiff alleged that (1) the City was blocking his rehabilitation efforts at 1146 Washburn, causing him to lose his investment; (2) the City's rehabilitation calculations were unrealistic and rehabilitation was economically feasible; (3) the Topeka Housing and Neighborhood Development Department acted inconsistently with its guidelines when it avoided calls from plaintiff's banker; (4) the City wrongly sought to make plaintiff liable for involuntary demolition costs; and (5) the City violated plaintiff's equal protection and due process rights.  Id.

**II.      The 421 Southwest Tyler Property**

On January 23, 2002, plaintiff was notified[2] that the property at 421 Southwest Tyler was unfit for human use or habitation.  At an administrative hearing on March 18, 2002,[3] plaintiff stated that he intended to obtain federal funds and a private bank loan to rehabilitate the property.  The City determined that the property was unfit and ordered demolition.  On April 19, 2002, plaintiff filed a petition in the Shawnee County District Court to enjoin demolition of his property at 421 Southwest Tyler.  See Petition For Temporary And Permanent Injunction, Exhibit B to Defendant's Memorandum (Doc. #18).

**III.      The State Court Proceeding And Subsequent State Court Litigation**

After consolidating plaintiff's petitions for injunction, the Shawnee County District Court denied them. See Journal Entry, Exhibit D to Defendant's Memorandum (Doc. #18).  The journal entry indicates that plaintiff had counsel and that he presented evidence and argument at a hearing on October 30, 2002. Id.  The district court held that in authorizing the demolitions, the administrative hearing officer had acted within the authority granted by K.S.A. § 17-4769 (authorizing the City to adopt ordinances relating to the repair, demolition or removal of unsafe, unsanitary, dangerous or detrimental structures) and Topeka City Code §§ 26-546 to 26-558 (authorizing removal or demolition when repair cannot be made at reasonable cost in relation to fair market value-defined as 15 per cent or less of fair market value). Id. at 1-3.  It therefore allowed the City to demolish both structures in accordance with the orders of the hearing officer. The district court also found that (1) the cost to repair 1121 Washburn was approximately $49,000 and

---

[2]      It is unclear from plaintiff's complaint who notified him of this determination.

[3]      In his second amended complaint, plaintiff alleges that this hearing was held on March 18, 2001.  The Court assumes that this is a typographical error because plaintiff did not obtain the property until August 29, 2001.

the appraised value, if repairs were completed, would be $37,000; (2) the cost to repair 421 Southwest Tyler was approximately $41,000, the estimated replacement cost was $158,000 and plaintiff presented no evidence regarding its appraised value; (3) the City had given plaintiff sufficient time to make repairs to both properties and plaintiff did not make the repairs; and (4) substantial evidence supported the demolition orders. Id. at 3-5. The state court also found that plaintiff had not complied with the requirements of the Housing and Neighborhood Development Department for participation in relevant funding and thus denied plaintiff's request for an injunction requiring the Housing and Neighborhood Development Department to "follow its own rules." Id. at 5. The district court did not determine whether the City could lawfully charge demolition costs to plaintiff.

Plaintiff appealed the district court decision to the Kansas Court of Appeals. In the docketing statement which plaintiff filed on January 21, 2003, he stated that "violations of constitutional rights and due process" provided the statutory authority for his appeal and that his appeal challenged the constitutionality of a statute or ordinance. See Docketing Statement, Exhibit H to Defendant's Memorandum (Doc. #18) at 2. Specifically, plaintiff stated that the City "made determination[s] on invalid ordinance[s] and defective due process" and that he "challenge[d] the constitutional validity of the city ordinance, even if it had been properly enacted." Id. at 3. On April 21, 2003, plaintiff filed a motion to voluntarily withdraw his appeal, which the Court of Appeals granted on May 5, 2003. See Order Of The Kansas Court Of Appeals, Exhibit J to Defendant's Memorandum (Doc. #18).

**IV.     The Demolition Of Plaintiff's Properties**

Some time after the district court entered judgment on November 6, 2002, the City demolished plaintiff's properties at 1146 Washburn and 421 Southwest Tyler. The Code Compliance Services then

– 5 –

billed plaintiff for the two demolitions.  In response, plaintiff informed the agency that he believed it had

violated federal law by seeking reimbursement when it had used federal community development block

grant funds to clear the lots.  Plaintiff also told the agency that the City could not seek reimbursement from

low income property owners.  In response, the agency assigned its claim against plaintiff to a bill collection

attorney.

## V.  Plaintiff's Federal Action

On December 20, 2002, while his case was still on appeal, plaintiff filed this suit.  Among other

things, he sought a temporary restraining order to prevent the City from demolishing his properties. See

Request For Emergency Temporary Restraining Order Hearing (Doc. #2) filed December 20, 2002.  On

December 23, 2002, the Court overruled plaintiff's request for a temporary restraining order, finding that

it appeared to lack jurisdiction, but granted plaintiff leave to file an amended complaint.  See Memorandum

And Order (Doc. #4) filed February 5, 2003.  Plaintiff amended his complaint accordingly and later filed

a second amended complaint.

Plaintiff's federal action includes several claims, some of which are not relevant to this matter.[4]  On

---

[4]        In addition to the claims dismissed by the Court under Rooker-Feldman, plaintiff also
alleged (1) that the City violated 42 U.S.C. § 1981 by disrupting his janitorial contract after he raised
questions about code enforcement and demolition and their effect on racial minorities and denying him
financial resources to pursue this claim; (2) that the City violated 42 U.S.C. § 1983 by depriving him of his
right to free speech under the First and Fourteenth Amendments, depriving him of his right to own and
enjoy property under the Fourteenth Amendment, disrupting plaintiff's janitorial
contract after he raised questions about code enforcement and demolition and their effect on racial
minorities, and depriving him of resources needed to pursue redress; and (3) that the City violated
42 U.S.C. § 1985 by denying plaintiff the benefits of his contracts.  These claims were unaffected by the
Court's dismissal under Rooker-Feldman, see Memorandum And Order (Doc. #76) at 28, and proceeded
to trial or were otherwise resolved.  The Court now considers only the claims which it originally dismissed
(continued...)

February 13, 2004, based on the Rooker-Feldman doctrine, the Court dismissed plaintiff's claims that the

City (1) violated 42 U.S.C. § 1981 by denying him rental rehabilitation loans authorized by 24 C.F.R.

§ 570.202 (part of Count I); (2) violated 42 U.S.C. § 1982 by demolishing the structures on his property

(Count II); (3) violated 42 U.S.C. § 1983 by increasing residential housing code standards to unreasonable

levels and aggressively and selectively enforcing its policy against racial minorities (part of Count III);

(4) violated 42 U.S.C. § 1985 by denying plaintiff the use and enjoyment of his property (Count IV); and

(5) violated the FHA, 42 U.S.C. §§ 3604 and 3605, by discriminating against him on the basis of race in

refusing to make available the homes which plaintiff purchased from the tax sale and refusing to provide

funds for rehabilitation.  See Memorandum And Order (Doc. # 76) filed February 13, 2004.  Plaintiff

appealed and, as noted above, the Tenth Circuit reversed.  The Court now considers the application of the

doctrine of res judicata to plaintiff's claims.

### Analysis

In applying the doctrine of res judicata, full faith and credit requires the Court to give the same

preclusive effect to a state court judgment that the courts of that state would afford the judgment.  See

Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 380 (1985) (interpreting 28 U.S.C.

§ 1738).  Under that doctrine, a court's final judgment on the merits of an action is conclusive on all matters

which were, or could have been, litigated by the parties in that action.  O'Keefe v. Merrill Lynch & Co.,

32 Kan. App.2d 474, 479, 84 P.3d 613, 618 (2004).  Under Kansas law, a claim is barred by the

doctrine of res judicata when the following four conditions are met: "(1) identity in things sued for;

---

[4](...continued)
under Rooker-Feldman.

(2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of the persons for or against whom the claim is made." Carter v. The City of Emporia, 815 F.2d 617, 619-20 (10th Cir. 1987) (citing Wells v. Ross, 204 Kan. 676, 678, 465 P.2d 966, 968 (1970)).

Under Kansas law, a cause of action for purposes of res judicata is defined as the entire set of "substantive legal theories" arising out of "the same factual transactions or series of connected transactions." O'Keefe, 32 Kan. App.2d at 480, 84 P.3d at 618. In other words, "Kansas law emphasizes that the claim or cause of action is defined . . . in terms of the factual circumstances of the controversy rather than the legal theory or remedial statute on which the suit is grounded." Carter, 815 F.2d at 620 (citing Wells, 204 Kan. at 678, 465 P.2d at 968). It is the doctrine of res judicata that "prevents the splitting of a single cause of action or claim into two or more suits." Parsons Mobile Prods., Inc. v. Remmert, 216 Kan. 138, 140, 531 P.2d 435, 437 (1975).

Generally, "a suit for an injunction is a separate cause of action from a suit for damages, and therefore res judicata does not preclude a subsequent action for damages." Jackson Trak Group, Inc. v. Mid States Port Auth., 242 Kan. 683, 692, 751 P.2d 122, 129 (1988). In fact, "in several Kansas cases it has been held that an action for injunctive relief . . . does not constitute the same cause of action as an action for damages." Thompson-Hayward Chem. Co. v. Cyprus Mines Corp., 8 Kan. App.2d 487, 492, 660 P.2d 973, 977 (1983). This general rule is tempered, however, when the injunction ruling includes findings of the court which determine that defendant acted lawfully. See Burnison v. Fry, 199 Kan. 277, 281-82, 428 P.2d 809, 813 (1967). In such cases, plaintiff cannot seek further remedies for the conduct deemed lawful in the prior injunction proceeding. Id.

Plaintiff makes two general arguments against the application of the doctrine of res judicata: (1) that

– 8 –

since the damages did not accrue until the City demolished his properties, he could not have brought his

constitutional claims in the district court suit; and (2) that the causes of action are not identical because he

sought only injunctive relief in state court and now seeks monetary damages in federal court.[5]  While

plaintiff does not specifically apply these arguments to any individual statutory claim, the Court will address

each claim in turn.[6]

## I.       Plaintiff's Claim Under 42 U.S.C. § 1981

Plaintiff's federal action alleges that the City discriminated against him based on race, in violation

of 42 U.S.C. § 1981,[7] in denying him rental rehabilitation loans authorized by 24 C.F.R. § 570.202.[8]

---

[5]        Citing no authority, Bolden couches this argument in terms of the identity in things sued for.
Kansas case law, however, treats these arguments as challenging the identity in the causes of action. See
Jackson Trak Group, Inc., 242 Kan. 683, 751 P.2d 122 (1988); Thompson-Hayward Chemical Co., 8
Kan. App.2d 487, 660 P.2d 973 (1983); Burnison, 199 Kan. 277, 428 P.2d 809 (1967).  The Court will
therefore treat the argument as an objection to the second element of res judicata outlined above.

[6]        The City does not challenge plaintiff's right to sue under 42 U.S.C. § 1982 for the actual
demolition of his properties.  The Court finds that Bolden has shown good cause why this claim should not
be dismissed under the doctrine of res judicata.

[7]        Section 1981(a) provides in pertinent part as follows:

All persons within the jurisdiction of the United States shall have the same right in every State
and Territory . . . to the full and equal benefit of all laws and proceedings for the security of
persons and property as is enjoyed by white citizens, and shall be subject to like punishment,
pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[8]        Section 570.202(b) provides in pertinent part as follows:

[Community Development Block Grant] funds may be used to finance the following types
of rehabilitation activities, and related costs, either singly, or in combination, through the use
of grants, loans, loan guarantees, interest supplements, or other means for buildings and
improvements[:]
(1) Assistance to private individuals and entities . . . to acquire for the purpose of
(continued...)

– 9 –

Specifically, plaintiff complains of the hearing officer's conduct at the administrative hearing on October 15, 2001, and the hearing officer's subsequent order of October 19, 2001, denying rehabilitation loans.  From the complaint, it appears that this claim only relates to plaintiff's attempt to procure loans to rehabilitate 1146 Washburn.

This claim is almost identical to plaintiff's state court claim for injunctive relief, filed November 9, 2001.  There, plaintiff challenged the denial of rehabilitation loans, stating that "the [Housing and Neighborhood Development Department] is not following its own rules."  Plaintiff's Section 1981 claim and his state court petition emanate from the administrative hearing on October 15, 2001, and the subsequent order of the administrative hearing officer, and they share an identity in the causes of action.

In the state court proceeding, plaintiff could have raised his constitutional claim that the administrative hearing officer discriminated against him on the basis of race in denying the loan.  He may not now proceed under a new legal theory which seeks additional remedies for conduct which he has previously challenged.  See Carter, 815 F.2d at 620 (factual circumstances of case, not legal remedy sought, controls application of doctrine of res judicata).  Moreover, the state court determined that the administrative hearing officer had acted lawfully in denying plaintiff's loan request.  This determination bars plaintiff from re-litigating the same conduct in his federal action.  See Burnison, 199 Kan. at 281-82, 428 P.2d at 813 (plaintiff cannot seek further remedy against conduct deemed lawful in prior action for injunctive relief).  Plaintiff has not shown good cause why his Section 1981 claim – that the City discriminated against him on the basis of race when it denied him rental rehabilitation loans authorized by

---

[8](...continued)
rehabilitation, and to rehabilitate properties, for use or resale for residential purposes.

-10-

24 C.F.R. § 570.202 – should not be dismissed under the doctrine of res judicata.  That claim is therefore

dismissed.

**II.      Plaintiff's Claim Under 42 U.S.C. § 1983**

Plaintiff argues that the City selectively and aggressively enforced unreasonable residential housing

codes and discriminated against him so as to deprive him of the right to own and enjoy his property in

violation of 42 U.S.C. § 1983.[9]  Specifically, plaintiff argues that the City deprived him of capital assets

so that he could not pursue his claims in state or federal court.  This allegation cites the demolition of

plaintiff's property as the act which ultimately deprived plaintiff of the right to own and enjoy his property.

Apparently, this allegation also stems from the City's attempt to charge plaintiff the costs of demolition

because such charge obstructed plaintiff's financial ability to maintain his legal claims.

The demolition of plaintiff's properties and the charge to him of demolition costs (including the

City's hiring of a bill collection attorney) did not occur until after plaintiff filed his state court petition for

injunctive relief.  Indeed, these harms could not have occurred until after the state court action ended and

the City took further steps to demolish plaintiff's property.  As the Tenth Circuit noted, "all the state-court

judgment did was permit the City to demolish Mr. Bolden's buildings-it did not require their demolition."

Bolden, 441 F.3d at 1145.  Therefore, the harm which plaintiff complains of did not arise out of the same

---

[9]        Section 1983 provides in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
any State . . . subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress.

circumstances at issue in the state court action, and res judicata does not bar plaintiff's claim under

Section 1983.  See Carter, 815 F.2d at 620.

Plaintiff's state court action and his Section 1983 claim do not share a common identity.  Plaintiff

has therefore shown good cause why his Section 1983 claim – that defendants selectively and aggressively

enforced unreasonable residential housing codes and discriminated against him – should not be dismissed

under the doctrine of res judicata.

**III.    Plaintiff's Claim Under 42 U.S.C. § 1985**

Plaintiff alleges that in violation of 42 U.S.C. § 1985,[10] the City engaged in a conspiracy to deny

his right to use and enjoy his property.  This allegation stems from plaintiff's substantive claim under Section

1983, discussed above, and the City only argues that it should have been brought in state court with the

Section 1983 claim.  Because res judicata does not bar plaintiff's Section 1983 claim, this argument is

without merit.  Plaintiff has therefore shown good cause why his Section 1985 claim – that the City engaged

in a conspiracy to deny his right to use and enjoy his property – should not be dismissed under the doctrine

of res judicata.

**IV.    Plaintiff's Claims Under The Fair Housing Act, 42 U.S.C. §§ 3604 and 3605**

Plaintiff alleges that the City refused to make his property available to him, in violation of

---

[10]      Section 1985 provides in pertinent part as follows:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving,
either directly or indirectly, any person or class of persons of the equal protection of the laws
. . . the party so injured or deprived may have an action for the recovery of damages
occasioned by such injury or deprivation . . . . against any one or more of the conspirators.

-12-

Section 3604 of the FHA,[11] and discriminated against him in denying rehabilitation loans, in violation of

Section 3605 of the FHA.[12]  Specifically, under Section 3604(b), plaintiff argues that the City utilized its

tax sale scheme to deprive him of property which he rightfully purchased but which had been scheduled

for demolition.  Under Section 3605, as a governmental entity involved in real estate transactions, plaintiff

argues that the City denied him funding to rehabilitate his properties because of his race.

Under Section 3604(b), plaintiff's claim must challenge the sale or rental of the disputed properties.

The City sold the properties to plaintiff in August of 2001, well before he brought his state court claim in

April of 2002.  Thus, the factual circumstances giving rise to plaintiff's Section 3604 claim existed when

he filed his state court action, and he could have brought his claim in state court.  Similarly, plaintiff's

Section 3605 claim – that the City discriminated against him in denying him access to rehabilitation loans

– mirrors his Section 1981 claim, discussed above, and involves factual circumstances that existed when

he filed his state court action.  Again, plaintiff may not now challenge conduct under a new legal theory

when such conduct was, or could have been, challenged in his prior state court action.  See Carter, 815

_____

[11]    Section 3604(b) provides in pertinent part as follows:

As made applicable by section 3603 of this title and except as exempted by sections
3603(b) and 3607 of this title, it shall be unlawful . . .
(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental
of a dwelling, or in the provision of services or facilities in connection therewith, because of
race, color, religion, sex, familial status, or national origin.

[12]    Section 3605(a) provides in pertinent part as follows:

It shall be unlawful for any person or other entity whose business includes engaging in
residential real estate-related transactions to discriminate against any person in making
available such a transaction, or in the terms or conditions of such a transaction, because of
race, color, religion, sex, handicap, familial status, or national origin.

F.2d at 620 (factual circumstances of case, not legal remedy sought, controls application of doctrine of res judicata). Bolden has not shown good cause why these claims should not be dismissed under the doctrine of res judicata, and the claims are therefore dismissed.

**IT IS THEREFORE ORDERED** that plaintiff has failed to show good cause why his claims under 42 U.S.C. §§ 1981 and the Fair Housing Act, 42 U.S.C. §§ 3604 and 3605, should not be dismissed under the doctrine of res judicata. These claims are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that plaintiff has shown good cause why his claims under 42 U.S.C. §§ 1982, 1983 and 1985 should not be dismissed under the doctrine of res judicata. These claims remain in the case.

Dated this 27th day of October, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge