**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JAMES L. BOLDEN,                        )<br>                                                      )<br>            **Plaintiff,**                       )<br>                                                      )       CIVIL ACTION<br>v.                                                  )<br>                                                      )       No. 02-2635-KHV<br>THE CITY OF TOPEKA,                 )<br>                                                      )<br>            **Defendant.**                     )<br>_____)| |

**MEMORANDUM AND ORDER**

Under 42 U.S.C. § 1983, James L. Bolden brings suit against the City of Topeka, alleging violation of his right to substantive due process under the Fourteenth Amendment. This matter comes before the Court on plaintiff's Motion For Summary Judgment (Doc. #153) filed April 5, 2007 and Defendant's Motion For Summary Judgment (Doc. #154) filed April 6, 2007. For reasons stated below, the Court overrules the motions.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942

F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

**Factual Background**

The parties have stipulated to the following material facts:

At a county tax sale on August 29, 2001, plaintiff purchased properties located at 1146 S.W. Washburn and 421 S.W. Tyler in Topeka, Kansas. On August 10, 2001 – before plaintiff purchased the properties – an administrative hearing officer for the City of Topeka had issued an order which found that the structures on Washburn were unfit for human use or habitation and that repair, alteration or improvement was not possible at a reasonable cost. The administrative hearing officer subsequently ordered that the structures be removed or demolished within 30 days.

On September 18, 2001, plaintiff requested a hearing to appeal the demolition order. After a hearing on October 15, 2001, an administrative hearing officer found that plaintiff had no evidence of ability or plans to rehabilitate the Washburn property, and affirmed the demolition order. On November 9, 2001, plaintiff sued the City in state court, seeking an injunction to prevent it from demolishing the Washburn property.

On March 18, 2002, the City held an administrative hearing regarding the property at 421 S.W. Tyler.[1] On March 26, 2002, an administrative hearing officer issued an order which found that the structures were unfit for human use or habitation and that repair, alteration or improvement was not possible at a reasonable cost.[2] The administrative hearing officer later ordered that the structures on Tyler be removed or demolished within 30 days. On April 19, 2002, plaintiff sued the City in state court, seeking an injunction to prevent it from demolishing the Tyler property.

On October 30, 2002, the state court consolidated plaintiff's two lawsuits and heard arguments on plaintiff's request for injunctive relief. At the hearing, plaintiff's counsel presented evidence and arguments. On cross-examination, plaintiff admitted that the Tyler property was uninhabitable. The state court denied plaintiff's request for injunctive relief and upheld the demolition orders.[3] In January of 2003, under color of state law, the City demolished the structures

---

[1] On January 23, 2002, plaintiff received notice of this hearing, which originally had been scheduled for February 11, 2002. Plaintiff requested that the hearing be continued until March of 2002.

[2] The record indicates that the City estimated the replacement value of the house on the Tyler property to be $154,570.00, and the cost of repair to be $36,995.87.

[3] The state court noted that "[t]here has been essentially no action taken by [plaintiff] on the Tyler property that entitles [plaintiff] to preserve it," and that "the City delayed [its demolition order] and allowed [plaintiff] numerous attempts to try to rehabilitate [the Washburn] property."

(continued...)

on Washburn. In February of 2003, under color of state law, the City demolished the structures on Tyler.

The administrative hearing officers entered the demolition orders of August 10, 2001 and March 26, 2002 pursuant to the City unsafe structures code. From February of 1996 until April of 2004, Section 26-546 described the purpose of the unsafe structures code as follows:

> Whereas the city council has found that there exists [sic] within the corporate limits of the city structures which are unfit for human use or habitation due to dilapidation, defects increasing the hazard of fires, accidents or other calamities, lack of ventilation, light or sanitary facilities or other conditions including those set forth in this article which render such structures unsafe, unsanitary or otherwise inimical to the welfare of the residents of the city, it is hereby deemed necessary by the council to require or cause the repair, closing or demolition or removal of such structures in the manner provided in this article.

Topeka, Kan., Code art. XI, § 26-546. From February of 1996 until April of 2004, Section 26-550 provided that an administrative hearing officer could find a structure unfit for human use or habitation if conditions were found to be "dangerous or injurious to the health, safety or welfare of the occupants of such buildings or other residents of the city," or to have " a blighting influence on properties in the area." According to Section 26-550, such conditions could include the following, without limitation:

(1)    Whenever the building or structure, or any portion thereof, because of (i) dilapidation, deterioration or decay; (ii) faulty construction; (iii) the removal, movement or instability of any portion of the ground necessary for the purpose of supporting such building; (iv) the deterioration, decay or inadequacy of its foundation; or (v) any other cause, is likely to partially or completely collapse;

---

[3](...continued)
On December 18, 2002, plaintiff filed a notice of appeal of the state court decision. In part, plaintiff argued that the City made its demolition decisions under an invalid ordinance and without effective due process. On April 21, 2003, plaintiff filed a motion to withdraw his appeal. On May 5, 2003, the Kansas Court of Appeals granted the motion and dismissed plaintiff's appeal.

    (2)    Whenever any portion thereof has been damaged by fire, tornado, wind, flood or by any other cause, to such an extent that the structural strength or stability thereof is materially less than it was before such catastrophe and is less than the minimum requirements of the building code for new buildings of similar structure, purpose or location;

    (3)    Whenever any portion or member or appurtenance thereof is likely to fail, or to become detached or dislodged, or to collapse and thereby injure persons or damage property;

    (4)    Dilapidation, disrepair or structural defects;

    (5)    Whenever any portion of a building, or any member, appurtenance or ornamentation on the exterior thereof is not of sufficient strength or stability, or is not so anchored, attached or fastened in place so as to be capable of resisting a wind pressure of one half of that specified in the building code for new buildings of similar structure, purpose or location without exceeding the working stresses permitted in the building code for such buildings;

    (6)    Defects therein increasing the hazard of fire, accident or other calamities;

    (7)    Walls, sidings or exteriors of a quality and appearance not commensurate with the properties in the neighborhood which creates an unsightly appearance and causes a blight to adjoining properties and the neighborhood;

    (8)    Failure to meet the minimum housing standards established by chapter 82, article II of the Code of the City of Topeka; or

    (9)    Any violation of fire or building or regulations which renders the structure unsafe.

Topeka, Kan., Code art. XI, § 26-550. During the same period, Section 26-551 permitted an administrative hearing officer, after notice and a hearing, to order repair or demolition of a structure deemed unfit for human use or habitation. It specifically provided as follows:

(a) . . . [I]f the administrative hearing officer determines that the structure . . . is unfit for human use or habitation or otherwise endangers the life, health, property or safety of its inhabitants or the public, the administrative hearing officer . . . shall issue . . . an order which:

    (1)    If repair, alteration or improvement of the structure can be made at a reasonable cost in relation to the value of the

> structure, which cost shall not exceed 15 percent of the replacement value of such structure as established by the Shawnee County Appraiser, the owner of the structure shall, within the time specified in the order, repair, alter or improve such structure to render it fit for human use or habitation; or
>
> (2) If repair, alteration or improvement of the structure cannot be made at a reasonable cost in relation to the replacement value, that is to say, 15 percent or less of the replacement value of such structure, which percentage is hereby deemed to be a reasonable standard by which to require either repair, alteration or improvement, or removal or demolition, the owner shall within the time specified in the order remove or demolish such structure. * * *

Topeka, Kan., Code art. XI, § 26-551. In lieu of the 15 per cent threshold for defining a reasonable cost of repair in relation to the replacement value of the property, a previous version of Section 26-551 defined a reasonable cost of repair as one "not exceed[ing] 50 percent of the fair market value of such structure." After it demolished plaintiff's properties, the City amended its code to define reasonable cost of repair as "thirty percent (30%) or less of the replacement value of such structure."

On December 20, 2002, plaintiff filed suit against the City in this Court. In his second amended complaint, plaintiff alleged discrimination on the basis of race under 42 U.S.C. §§ 1981 and 1982, First and Fourteenth Amendment violations under 42 U.S.C. § 1983, civil conspiracy under 42 U.S.C. § 1985 and violations of the Fair Housing Act, 42 U.S.C. §§ 360 and 3605. On October 27, 2006, the Court dismissed several of plaintiff's claims on the basis of res judicata. See Memorandum And Order (Doc. #147) at 9-14. Certain claims under 42 U.S.C. §§ 1982, 1983 and 1985 – all related to the demolition of plaintiff's properties – remained in the case. See id. at 9 n.2, 11-12. On March 16, 2007, Magistrate Judge James P. O'Hara conducted a status and scheduling conference at which plaintiff's counsel represented that plaintiff intended to proceed only on a substantive due process claim under Section 1983. See Second Amended Scheduling Order

(Doc. #152) at 1-2 ("According to [plaintiff's counsel], who has consulted fully with his client, plaintiff now only intends to proceed on his section 1983 substantive due process claim. . . . [Plaintiff's counsel] further confirmed plaintiff has abandoned his previously asserted disparate impact claim."). Plaintiff argues that the City unsafe structures code violates substantive due process because it is not rationally related to any legitimate government interest. The parties have each submitted a motion for summary judgment regarding liability on this claim.

## Analysis

Under Section 1983, plaintiff claims that Section 26-551 of the City unsafe structures code violates the Fourteenth Amendment substantive due process clause because "destroying [] property without compensation or the opportunity to repair and abate on the extraordinarily low threshold finding that the cost of repairs would exceed 15% of the replacement value is arbitrary, unreasonable, and bears no rational relationship to the City's legitimate interest in public health and safety." Motion For Summary Judgment (Doc. #153) at 5. As noted above, the parties have filed cross-motions for summary judgment. The City argues that it is entitled to summary judgment as a matter of law because (1) the doctrine of res judicata bars plaintiff's claim, and (2) the City unsafe structures code is rationally related to the legitimate government interest in public safety. Conversely, plaintiff argues that he is entitled to summary judgment because as a matter of law, the 15 per cent demolition threshold is so extraordinarily low as to be arbitrary and unreasonable.

**I.    Res Judicata**

The City argues that plaintiff's substantive due process claim is barred by res judicata because the claim relates to the City's demolition orders and plaintiff could have brought the claim

in his state court challenge to those orders.[4]  The Court previously considered the application of res judicata to each of plaintiff's claims and determined that the Section 1983 claim should not be dismissed on that ground.  See Memorandum And Order (Doc. #147) at 11-12.  Plaintiff argues that the Court's prior determination controls.

Under Kansas law, the application of res judicata requires a common identity between the prior and current causes of action.  Carter v. The City of Emporia, 815 F.2d 617, 619-20 (10th Cir. 1987) (citing Wells v. Ross, 204 Kan. 676, 678, 465 P.2d 966, 968 (1970)).  In this regard, a claim for injunctive relief is generally considered a separate cause of action from an action for money damages.  Thompson-Hayward Chem. Co. v. Cyprus Mines Corp., 8 Kan. App.2d 487, 492, 660 P.2d 973, 977 (1983).  Therefore, where plaintiff has previously sought only injunctive relief, "res judicata does not preclude a subsequent action for damages."  Jackson Trak Group, Inc. v. Mid States Port Auth., 242 Kan. 683, 692, 751 P.2d 122, 129 (1988).  This general rule is tempered when the injunctive ruling includes findings of the court which determine that defendant acted lawfully. See Burnison v. Fry, 199 Kan. 277, 281-82, 428 P.2d 809, 813 (1967).  In such cases, plaintiff cannot seek further remedies for the conduct deemed lawful in the prior injunction proceeding.  Id.

Here, plaintiff sought only injunctive relief in his state court action.  Accordingly, plaintiff's state court claim will share an identity with this action – in which plaintiff seeks money damages – only if the state court made specific findings as to the validity of the City unsafe structures code. After reviewing the transcript of the state court trial, see Transcript Of Court Trial, attached as

---

[4] Under modern Kansas law, "res judicata" typically refers to claim preclusion, as distinct from issue preclusion or collateral estoppel.  Waterview Resolution Corp. v. Allen, 274 Kan. 1016, 1023, 58 P.3d 1284, 1290 (2002).  As used in this order, the term "res judicata" is intended to refer only to claim preclusion.

Exhibit 3 to <u>Defendant's Response To Plaintiff's Motion For Summary Judgment And Motion To Dismiss</u> ("<u>Defendant's Response</u>") (Doc. #157) filed April 30, 2007, and the state court's journal entry, <u>see</u> <u>Journal Entry</u>, attached as Exhibit D to <u>Memorandum In Support Of Defendant City Of Topeka's Motion To Dismiss</u> (Doc. #18) filed May 23, 2003, the Court finds no evidence that the state court made any finding as to the validity of the City unsafe structures code. Because the state court did not rule on the validity of the ordinance in plaintiff's suit for injunctive relief, res judicata does not bar plaintiff's substantive due process claim for money damages in this action.[5] The Court therefore finds that the City is not entitled to summary judgment on that basis.

## II.     Rationality Of City Unsafe Structure Code

The City argues that it is entitled to summary judgment on plaintiff's substantive due process claim because as a matter of law, the City unsafe structures code is rationally related to the City's legitimate interest in public safety. In his cross-motion, plaintiffs argues that he is entitled to summary judgment because the 15 per cent demolition threshold of the City unsafe structures code is so low that it cannot be rationalized.

Substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986); <u>see also</u> <u>Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.</u>, 936 F.2d 483, 490 (1991) (substantive due process guarantees that state will not arbitrarily deprive person of life,

---

[5] To the extent that the City seeks to invoke res judicata on the basis of plaintiff's appeal of the state court judgment, the Court notes that the Kansas Court of Appeals dismissed the appeal on plaintiff's motion without judging its merits. <u>See</u> <u>Order</u>, attached as Exhibit 6 to <u>Defendant's Response</u> (Doc. #157). Because a final judgment on the merits is necessary to trigger res judicata, plaintiff's appeal cannot serve as the basis for applying res judicata in this case. <u>See</u> <u>Carter</u>, 815 F.2d at 620 (for res judicata to apply, judgment on merits must have been entered in initial action).

liberty or property regardless of how fair procedures are that are used to make decision). Because the Supreme Court has always been reluctant to expand the concept of substantive due process, such claims are subject to heightened standards. Rector v. City and County of Denver, 348 F.3d 935, 948 (10th Cir. 2003) (citing County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)). For purposes of substantive due process, legislative and executive governmental functions are distinct, and courts use different criteria to identify what is fatally arbitrary, depending on whether legislation or a specific act of a governmental officer is at issue. Lewis, 523 U.S. at 846. Executive acts characteristically apply to a limited number of persons and typically arise from ministerial or administrative activities; legislative acts generally apply to a larger segment of society and include laws and broad-ranging executive regulations. McKinney v. Pate, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994), cited in Roe v. Antle, 964 F. Supp. 1522, 1532 (D.N.M. 1997). Here, the Court construes plaintiff's substantive due process claim as a challenge to the City's legislative adoption of the unsafe structures code.[6]

---

[6] The parties do not specifically address whether plaintiff complains of executive or legislative action. Because plaintiff generally complains of the language of the unsafe structures code which the City has adopted, rather than a government official's enforcement of the ordinance, his claim concerns a legislative act. See McKinney, 20 F.3d at 1557 n.9 (citing Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198-99 (1979)) (where individual challenges underlying rule, rather than application of rule, she complains of legislative act).

Were the Court to construe plaintiff's claim as a substantive due process challenge to executive action, plaintiff would be required to show a "cognizable level of executive abuse of power as that which shocks the conscience." Lewis, 523 U.S. at 846. Plaintiff does not argue that the City's conduct shocks the conscience, and even if he did, the Court could not find the City's conduct so shocking. See El Malik v. City of Philadelphia, No. 06-1708, 2007 WL 984455, at *7 (E.D. Pa. Mar. 26, 2007) (citing Davet v. City of Cleveland, 456 F.3d 549, 552 (6th Cir. 2006)) (demolition of imminently dangerous structures in accordance with city code does not shock court's conscience); see also Williams v. Berney, No. CIVA04CV186WYDMJW, 2006 WL 753208, at *4 (D. Colo. Mar. 20, 2006) (citing Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)) (because Supreme Court specifically admonished that substantive due process violation requires more than

(continued...)

When local regulations are challenged on substantive due process grounds, "courts consistently defer to legislative determinations as to the desirability of particular statutory schemes." Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n, 889 F.2d 929, 935 (10th Cir. 1989). Unless the challenged law trammels fundamental personal rights, the Court presumes that the legislative body acted within its constitutional power and requires "only that the law bears a reasonable relation to the state's legitimate purpose."[7]  Id.  Where any conceivable legitimate governmental interest supports the contested ordinance, it is not arbitrary and capricious and cannot offend substantive due process norms. Universal Life Church v. Utah, 189 F. Supp.2d 1302, 1314-15 (D. Utah 2002) (citing Sam & Ali, Inc. v. Ohio Dep't of Liquor Control, 158 F.3d 397, 402 (6th Cir. 1998)). The determination whether the contested ordinance is arbitrary and capricious is a question of law for the Court. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part) (substantive due process claims routinely reserved without question for court; to charge jury with duty to assess constitutional

---

[6](...continued)
ordinary tort, conscience shocking standard requires high level of outrageousness).

[7]  In contrast, where a substantive due process claim alleges the deprivation of a fundamental right, the Court must determine whether the challenged legislation is narrowly tailored to serve a compelling government interest. Lawrence v. Texas, 539 U.S. 558, 593 (2003). Fundamental rights are those which, objectively, are deeply rooted in the nation's history and tradition, and are implicit within the concept of ordered liberty, Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997), including rights related to marriage, family, procreation and bodily integrity, Hughes v. Keath, 328 F. Supp.2d 1161, 1165-66 (D. Kan. 2004). Here, plaintiff does not argue that he asserts a fundamental right. Indeed, because property rights are created by independent sources such as state law, rather than the Constitution, such rights do not necessarily constitute fundamental rights. See Archuleta, 936 F.2d at 489 n.6 (discussing without deciding whether property rights derived from state law are fundamental); Highland Dev., Inc. v. Duchesne County, No. 203-CV-750 TC, 2007 WL 702237, at *23 (D. Utah Mar. 2, 2007) (citing Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003)) (denial of state granted property right does not create viable substantive due process claim). Because plaintiff does not argue the deprivation of a fundamental right, the Court applies the rational basis test to his claim.

legitimacy of governmental objectives far removed from usual practice); Schutz v. Thorne, 415 F.3d 1128, 1135-36 (10th Cir. 2005) (under rational basis review, legislative choice not subjected to courtroom factfinding). When exercising rational basis review, the Court is obligated to seek out any possible reason for validating the challenged law. Powers v. Harris, 379 F.3d 1208, 1217 (10th Cir. 2004).

As an initial matter, the Court notes that in the interest of the general public welfare, governments have wide latitude to regulate private property in ways that may adversely affect property owners. Harris v. City of Wichita, 74 F.3d 1249 (Table), 1996 WL 7963, at *5 (10th Cir. Jan. 3, 1996). More specifically, policies which promote safe housing serve the government interest in public health and welfare. Jones v. Wildgen, 320 F. Supp.2d 1116, 1128 (D. Kan. 2004). As noted above, the City expressly enacted its unsafe structures code for the purpose of remediating structures – including plaintiff's residential properties – which it considers "unfit for human use or habitation due to dilapidation, defects increasing the hazard of fires, accidents or other calamities, lack of ventilation, light or sanitary facilities or other conditions including those set forth in this article which render such structures unsafe, unsanitary or otherwise inimical to the welfare of the residents of the city." Topeka, Kan., Code art. XI, § 26-546. Plaintiff does not deny that the City's attempt to ensure the safety of residential housing through its unsafe structures code constitutes a legitimate government interest.

Under Kansas law, a municipality may adopt an ordinance which permits the demolition of uninhabitable property "if the repair, alteration or improvement of the structure cannot be made at

reasonable cost in relation to the replacement value of the structure."[8] K.S.A. § 17-4759(b)(3)(B). If a municipality adopts such an ordinance, Section 17-4759 commands the municipality to "fix a percentage of [repair] cost as being reasonable." Id. Modeling this authorizing statute, the City enacted its unsafe structures code and deemed the reasonable ratio of repair cost to replacement value to be 15 per cent or less. See Topeka, Kan., Code art. XI, § 26-551. The focus of plaintiff's claim is this 15 per cent demolition threshold, which requires an owner to demolish uninhabitable property regardless of the owner's willingness and ability to repair and restore the property. Specifically, plaintiff asserts that the 15 per cent demolition threshold is so low that it is facially arbitrary and unreasonable.

Although the rationality of the 15 per cent demolition threshold is a question of law, the Court's determination of the issue may be informed by the factual record. See, e.g., Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 891 (10th Cir. 1980) (citing McGeehan v. Bunch, 540 P.2d 238, 242 (N.M. 1975)) (statute once rational may become irrational due to altered circumstances of factual setting); Indep. Dairymen's Ass'n v. City & County of Denver, 142 F.2d 940, 942-43 (10th Cir. 1944) (plaintiff may establish through legitimate proof that challenged statute lacks rational factual basis); Salt Creek, L.P. v. City of Warr Acres, No. Civ. 01-1500-F, 2002 WL 32026152, at *13 (W.D. Okla. June 13, 2002) (describing rationality determination as "fact-bound legal issue"). Indeed, in United States v. Carolene Products Co., 304 U.S. 144, 153 (1938), the

---

[8] The framework of the City unsafe structures code – which uses a ratio of repair cost to replacement value to determine whether demolition of uninhabitable property is appropriate – closely tracks Section 17-4759. The State of Kansas has authorized this framework and plaintiff does not allege that the basic framework violates substantive due process. Specifically, plaintiff does not take issue with the authorizing statute or the general notion that demolition orders may be made on the basis of repair cost and replacement value. His complaint is limited to the 15 per cent demolition threshold, the establishment of which Section 17-4759 delegates to the City.

Supreme Court stated that "[w]here the existence of a rational basis for legislation whose constitutionality is attacked depends on facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry."

For plaintiff to prevail on his substantive due process claim, the Court must find that no state of facts either known or reasonably assumed affords support for the ordinance. See Powers, 379 F.3d at 1216-17 (citing Carolene Prods. Co., 304 U.S. at 154). The record, however, contains no evidence of the Topeka real estate market, property which is typically deemed uninhabitable in Topeka, the nature and cost of repairs typically required for such property or the reasons why the City adopted the 15 per cent threshold. Such matters are beyond the sphere of judicial notice, and the parties have provided no relevant evidence from which the Court can determine whether the 15 per cent demolition threshold is rationally related to a municipal interest in public safety. The City makes no attempt to justify the demolition threshold. While the Court is obligated to independently rationalize the ordinance if possible, it is actually skeptical that the 15 per cent demolition threshold has a rational relationship to public safety. At the same time, plaintiff bears the burden of proving that no set of circumstances might reasonably be assumed to justify the ordinance, and the Court is not convinced that plaintiff has met or can meet that burden of proof.[9]

---

[9] In his motion, plaintiff cites several state court opinions which are not helpful. See Motion For Summary Judgment (Doc. #153) at 5-9 (citing Hawthorne Savings & Loan Assoc. v. City of Signal Hill, 19 Cal. App.4th 148 (1993); Herrit v. Code Mgmt. Appeal Bd. of City of Butler, 704 A.2d 186 (1997); Washington v. City of Winchester, 861 S.W.2d 125 (1993); Horne v. City of Cordele, 230 S.E.2d 333 (1976); Horton v. Gulledge, 177 S.E.2d 885 (1970), overruled on other grounds by North Carolina v. Jones, 290 S.E.2d 675 (1982)). None of these cases specifically consider a local demolition ordinance in the context of substantive due process. In fact, Hawthorne considers procedural due process required under local law, see 19 Cal. App.4th at 160-61 ("Here, the City did not afford [plaintiff] the opportunity to choose repair of demolition, as required by due process and Health and Safety Code section 17980."), while Horne and Herrit involve takings
(continued...)

Because it cannot presently determine as a matter of law whether the 15 per cent demolition threshold is rational, the Court overrules the parties' cross-motions for summary judgment. At trial, the parties should be prepared to present evidence from which the Court can determine whether a set of facts exists or can be reasonably assumed which supports the demolition threshold of the City unsafe structures code.

**IT IS THEREFORE ORDERED** that plaintiff's Motion For Summary Judgment (Doc. #153) filed April 5, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion For Summary Judgment (Doc. #154) filed April 6, 2007 be and hereby is **OVERRULED**.

The Court directs Magistrate Judge James P. O'Hara to expedite the pretrial processing of this case, with the goal that it be ready for trial no later than March 4, 2008.

Dated this 19th day of September, 2007 at Kansas City, Kansas.

                                            s/ Kathryn H. Vratil
                                            Kathryn H. Vratil
                                            United States District Judge

---

[9](...continued)
claims, see 230 S.E.2d at 335-36 ("The vice of the ordinance under consideration is that it flatly permits uncompensated destruction of the owner's property . . . ."); 704 A.2d at 188 ("[Plaintiff] contends that the Code is unconstitutional because it fails to provide him with an opportunity to repair the Property before demolition. He asserts that this failure constitutes a taking in violation of . . . the 5th and 14th Amendments of the Federal Constitution."). Washington and Horton do not consider the federal Constitution, let alone its substantive due process clause. See 861 S.W.2d at 126-27 (evaluating local demolition ordinance in accordance with Sections 1 and 2 of the Kentucky constitution); 177 S.E.2d at 892 (finding demolition ordinance invalid under Article I, Section 19 of the revised North Carolina constitution).